UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE BRIDGEPORT GUARDIANS, INC. ET AL<br>PLAINTIFFS | CIVIL ACTION NO. B78-175 (JBA) |
| V. | |
| ARTHUR J. DELMONTE, ET AL<br>DEFENDANTS | NOVEMBER 25, 2008 |

## ORDER RE: SLUR AND HARASSMENT POLICIES

On August 9, 2005, the Plaintiff, the Bridgeport Guardians, Inc. ("Guardians"), the Defendants, City of Bridgeport ("City") and the Bridgeport Police Union, AFSCME Council 15, Local 1159, AFL-CIO ("Union") signed a Stipulation and Agreement [Docket #1419] accepting revisions to the slur and harassment policies which provided an alternative enforcement procedure to be applied when the Chief of Police or Deputy Chief violated the policies.

The parties submitted the changes to the Special Master that provided additional language to be included in the policies, specifically Sections 3.12-Sexual Harassment in the Workplace, Section 3.15-Threats, Intimidation and

Harassment, Section 3.16-Racial, Ethnic or Sexist Slurs and/or Graffiti of the Bridgeport Police Department Policy manual. Furthermore, the parties request that the Court approve the additional language.

On December 16, 2005, the Stipulation and Agreement was approved and adopted [Docket #1448](Arterton, J.).

Moreover, on April 27, 2006, the City through its attorney, William Wenzel, sent the Special Master correspondence notifying him that the Bridgeport Police Commission approved the revisions to the policies; specifically the policies numbered 3.12, 3.15 and 3.16 and stated that the materials would become part of the Department Manual. (Letter attached, Exhibit A).

In June 2008, Compliance Officer Sergeant Jessica Tillson delivered a computer disk with an Adobe PDF file containing the new Bridgeport Police Department Policy and Procedure Manual; the date of publication noted on the first and subsequent pages of the manual is December 18, 2007.

A review of the documentation revealed that the content of the Court ordered policy sections noted above had been changed, removed or inaccurately stated. Specific changes, omissions or errors are as follows:

I. SEXUAL HARASSMENT IN THE WORKPLACE:

A) In the new policy manual, new section number 2.7.6 Sexual Harassment in the Workplace (formally Section 3.12 in the old policy manual); subparagraph 2.7.6.4.2 of the new policy states "With the exception of any supervisor who files a complaint pursuant to CGS 3.12.5..." the correct statement should read "With the exception of any supervisor who files a complaint pursuant to Section 2.7.6.3 ..." the manual inaccurately cites an erroneous Connecticut General Statute instead of citing the appropriate subsection within the policy.

II. THREATS, INTIMIDATION AND HARASSMENT

A) In the new policy manual, new subsection 2.7.7 Threats, Intimidation and Harassment (formally Section 3.15 in the old policy manual); subparagraph 2.7.7.4.2 of the new policy states "With the exception of any supervisor who files a complaint pursuant to CGS 3.12.5..." the correct statement should read "With the exception of any supervisor who files a complaint pursuant to Section 2.7.7.3 ..." the manual inaccurately cites an erroneous Connecticut General Statute instead of citing the appropriate subsection within the policy.

B) In the new policy manual, subparagraph 2.7.7.6 titled "EEOC AND CCHRO" the subparagraph heading is missing "AND SPECIAL MASTER." Furthermore, the following sentence was completely omitted from the subparagraph: "In appropriate cases, Police Department employees may file a complaint with Special Master William Clendenen, P.O. Box 301, 400 Orange Street, New Haven, CT 06502."

It is apparent that the parties responsible for the creation of the new policy manual omitted the information giving sworn or civilian employees the opportunity to file their complaints with the Special Master. Additionally, the correct address for the Special Master is 400 Orange Street, New Haven, CT 06511.

The subparagraph following the above and numbered 2.7.7.7 is entitled "Important Notice of Obligation to Comply With This Policy." The term "or Special Master" is missing in the first sentence just after the terms EEOC or CCHRO.

III. RACIAL, ETHNIC OR SEXIST SLURS AND/OR GRAFFITI

The omissions and errors in this section were identical to the section on Threats, Intimidation and Harassment with the exception of section numbers:

A) In the new policy manual, new subsection 2.7.8 Racial, Ethnic or Sexist Slurs and/or Graffiti (formally Section 3.16 in the old policy manual); subparagraph 2.7.8.4.2, of the new policy states "With the exception of any supervisor who files a complaint pursuant to CGS 3.12.5..." the correct statement should read "With the exception of any supervisor who files a complaint pursuant to Section 2.7.8.3 ..." the manual inaccurately cites an erroneous Connecticut General Statute instead of citing the appropriate subsection within the policy.

B) In the new policy manual, subparagraph 2.7.8.6 titled "EEOC AND CCHRO" the subparagraph heading is missing "AND SPECIAL MASTER." Furthermore, the following sentence was completely omitted from the subparagraph: "In appropriate cases, Police Department employees may file a complaint with Special Master William Clendenen, P.O. Box 301, 400 Orange Street, New Haven, CT 06502."

It is apparent that the parties responsible for the creation of the new policy manual omitted the information giving sworn or civilian employees the opportunity to file their complaints with the Special Master. Additionally, the

5

correct address for the Special Master is 400 Orange Street, New Haven, CT 06511.

The subparagraph following the above and numbered 2.7.8.7 is titled "Important Notice of Obligation to Comply With This Policy." The term "or Special Master" is missing in the first sentence just after the terms EEOC or CCHRO.

POTENTIAL VIOLATIONS/CORRECTION

The Slur and Harassment policies have been the focus of many Recommended Rulings and Court Orders in this long-standing litigation. Sadly, the defendants have also had a long sordid history of violating Court Orders, including Orders on these very same policies. To this day, there remains the open issue of sanctions imposed upon the City for violating a court-ordered implementation of the Slur and Harassment policies years ago.

Moreover, in the defendant's June 6, 2007 <u>Objection/Reply to the Bridgeport Guardians' Status Report</u> (filed with the Special Master only attached as Exhibit B) regarding sanctions assessed against the City for the violation of the Slur and Harassment policies, the defendants state:

> "... once the City's non-compliance was noted, it took immediate steps to bring itself into compliance with the Court's Order and to comply *in*

*every regard* (emphasis added) with such." ... "...the City has embarked on a continuing effort to *fully and exactly comply* (emphasis added) with the Court's Orders in this regard" (pp. 2-3).

"... for the simple reason that once the non-compliance was identified, the BPD quickly and effectively took steps to remedy its non-compliance. If indeed the purpose of such sanctions are limited to those permissible under the established United States Supreme Court and Second Circuit Court of Appeals case law, namely insuring future obedience, Defendant would respectfully suggest no fine or a *de minimis* and nominal fine would now be appropriate" (p.5).

Despite the defendants' claim that they have done everything possible to comply with the Orders of the Court with regard to the Slur and Harassment Policies, the obvious omission of crucial information within the document tells a different story.

The defendants have altered court-ordered policies to circumvent procedures set into place that were approved and adopted by the United States District Court.

Within ten (10) days from the date of this Order the defendants are to submit to the Special Master a sworn affidavit or affidavits by those responsible for the omissions of the above noted information explaining their actions and failures to act.

Within thirty (30) days from the date of this Order the defendants are to correct the noted errors and omissions and disseminate the revised pages to all personnel and interested parties who possess a copy of the new Policy and Procedures Manual. The new pages must indicate "Revised" with a revision date noted.

Within forty-five (45) days from the date of this Order, the defendants will submit a sworn affidavit by the Chief of Police or the Acting Chief of Police that the errors and omissions have been corrected and that all personnel have received a copy of the revised pages.

Failure to comply with the above may subject the defendants to contempt and sanctions for violating the order of the Court.

Dated at New Haven, Connecticut, this 25 day of November 2008.

WILLIAM H. CLENDENEN, JR. [ct04261]
Special Master
Clendenen & Shea, LLC
400 Orange Street
New Haven, CT 06502
203/787-1183
203/787-2847 (fax)
office@clenlaw.com

CERTIFICATION:

This is to certify that a copy of the foregoing was mailed, postage prepaid, to Mark Anastasia, Esq., and Melanie Howlett, Esq., Office of City Attorney, 999 Broad Street, 2nd Floor, Bridgeport, CT 06604, William J. Wenzel, Esq. and Aimee J. Wood, Esq., Pullman & Comley, LLC, 850 Mainst Street, P.O. Box 7006, Antonio Ponvert, III, Esq., and Sean K. McElligott, Koskoff, Koskoff & Bieder, P.C., P.O. Box 1661, Bridgeport, CT 06601, Harry B. Elliott, Jr., Esq. AFSCME, Council 15, Legal Department, 290 Main Street, Meriden, CT 06450 on the 25th day of November, 2008.

_____
WILLIAM H. CLENDENEN, JR., ESQ.

# EXHIBIT A

# PULLMAN & COMLEY, LLC
## ATTORNEYS AT LAW

WILLIAM J. WENZEL
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006
p 203 330 2207
f 203 576 8888
wwenzel@pullcom.com

April 27, 2006

*VIA E-MAIL and FIRST CLASS MAIL*

William H. Clendenen, Jr.
400 Orange Street
New Haven, CT 06502

Re: <u>The Bridgeport Guardians, Inc., et al. v. Arthur Delmonte, et al.</u>

Dear Special Master Clendenen:

Pursuant to your request, let me report that the Bridgeport Police Commission, at its April 18, 2006, meeting, approved the revisions to the Bridgeport Police Department Manual, specifically Rules 3.12, 3.15 and 3.16, which had been submitted to Judge Arterton by stipulation of all parties and approved by the Court. These materials will now be part of the Department manual.

Should you have any questions in this regard, please do not hesitate to contact me.

Very truly yours,

William J. Wenzel

WJW:mrd
cc: The Honorable Janet Bond Arterton
    Antonio Ponvert, III, Esq.
    Harry B. Elliott, Jr., Esq.
    Mark T. Anastasi, Esq.
    Melanie J. Howlett, Esq.
    Jonathan B. Orleans, Esq.
    Maximino Medina, Jr., Esq.

Bridgeport/70379.1/WJW/596027v1

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE BRIDGEPORT GUARDIANS, INC., ET AL, <br><br> Plaintiffs, <br><br> vs. <br><br> ARTHUR J. DELMONTE, ET AL, <br><br> Defendants. | CIVIL ACTION <br> NO. B78-175 (JBA) <br><br><br><br><br><br> JUNE 6, 2007 |

## OBJECTION/REPLY TO THE BRIDGEPORT GUARDIANS' STATUS REPORT

By Status Report dated June 1, 2007, the Bridgeport Guardians addressed the issue of sanctions to be assessed against the City of Bridgeport for violations of the Slur and Harassment policies in light of the Court's Ruling on Special Master's Recommended Ruling re: Slur and Harassment Policies, entered by the Court on April 27, 2005 ("April 27 Order"). As the Guardians correctly note, the parties have struggled on many occasions to reach agreement to resolve these matters but have not been able to reach an agreement other than that submitted to the Court as a result of the parties' July 7, 2006 Stipulation. Accordingly, the matter is back in the hands of the Special Master for recommendation to the Court.

The Guardians also note that the City's position on the issue of sanctions with regard to the Slur and Harassment Policies, is different than that proposed by the Special Master's Recommended Ruling of May 18, 2004. That Recommended Ruling proposed penalties totaling $515,000, while offering certain options as to how parts of the money could be paid. It is the understanding of the City, however, that that

Recommended Ruling was not adopted by the Court and this matter was indeed remanded to the Special Master for a determination of what would be an appropriate sanction to be determined after the presentation of information on the City's financial situation and ability to pay. In light of that, the City would respectfully submit that the Special Master's recommendation of any specific sanction has no significance and the Court expects the Special Master to give this matter an entirely fresh look.

1. **The Relevant Factors to be Considered in Any Determination of an Appropriate Sanction**

    (a) <u>The Nature of the Violation</u>

The Special Master and the Court are both familiar with the nature of the violation which occurred in this case. While the City has always maintained that these failures were inadvertent and unintentional, the Master and the Court have noted that the City has had instances where it has not complied with other orders of the Court, and felt sanctions would be appropriate.

What is not in dispute are several points: First, the actual failure here was an administrative failure. It occurred with regard to policies that were ordered adopted by the Court as a way to help prevent occurrences of discrimination. The failures on the part of the City do not go to the core issue of discrimination.

There is also no dispute that once the City's non-compliance was noted, it took immediate steps to bring itself into compliance with the Court's Order and to comply in every regard with such. Indeed, the fines here were recommended by the Special Master sometime after the fact of the violations and after the Defendant had become aware of the non-compliance and purged itself to the maximum extent possible of that non-compliance.

There is also no dispute that since the Court's April 27, 2005 Order, which spelled out in detail a set of requirements for the Department to meet the dissemination, training and reporting requirements associated with these policies and the Court's Orders, the City has embarked upon a continuing effort to fully and exactly comply with the Court's Orders in this regard. This has included an extensive and continuing program to document the dissemination of such policies to each and every officer in the Department. It has included regular reports to the Court on these policies and numerous Court filings with regard to the status and compliance. It has included requests for guidance to the Court as to how the Order should be handled with regard to officers on extended sick leave, absent from the Department or serving overseas in active combat areas due to military commitments and recalls. The program has included detailed and extensive training of supervisory officers including the use of retained attorneys outside the Department as required by Court Order. In the over two years that such Order has been in effect, there have been no complaints or questions concerning the adequacy of the City's compliance with Court Orders in this regard. While the City would be foolhardy to claim its compliance has been perfect, it can fairly represent to the Court that it has done its very best to bring itself into compliance with the Court's Order.

### (b) The Legal Constraints with Regard to Contempt Sanctions

As the Court's Order properly reflects, the contempt citation issued here is intended to be a civil citation for contempt. As such, it cannot be imposed for the purposes of punishment. Civil contempt sanctions may be imposed only to serve the proper purposes recognized by the United States Supreme Court in <u>United Mineworkers of America v. Bagwell</u>, 512 U.S. 821, 828 (1994): compensation to a party that has suffered as a result of the contempt or to coerce future compliance. In this case, no Recommended Ruling of the Special Master nor any Order of the Court has ever suggested a compensatory purpose. Nor has any individual or party to this litigation ever claimed to have suffered any compensable injury as a result of the conduct in question. The Court's Order clearly recognizes this and notes that the sole purpose of this proposed sanction is to coerce future obedience. <u>See</u> Order dated April 7, 2005 at 6 [Doc. #1372]. Indeed, on page 6 of the Court's Order, it quotes the <u>United Mineworkers</u> decision with regard to this issue: "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." <u>United Mineworkers</u> at 512 U.S. at 829. Thus, a "flat, unconditional fine" totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance. <u>Id</u>. at 829 (citation omitted).

Here, the imposition of contempt fines absent any opportunity to purge would suggest "an intention to punish" rather than "to insure future lawfulness." <u>See New York State National Organization for Women v City of New York</u>, 159 F.3d 86, 94 (2d. Cir.

1998). As such, this would constitute a finding of criminal rather than civil contempt <u>Id</u>. at 93.

A review of the Master's Recommended Ruling and the Court's Order demonstrates that at least with regard to the conduct in question, the Defendant has never had the opportunity to purge, for the simple reason that once the non-compliance was identified, the BPD quickly and effectively took steps to remedy its non-compliance. If indeed the purpose of such sanctions are limited to those permissible under established United States Supreme Court and Second Circuit Court of Appeals case law, namely insuring future obedience, Defendant would respectfully suggest no fine or a *de minimis* and nominal fine would now be appropriate.

Not only did the City take action to immediately bring itself into compliance but it has for a period in excess of two years demonstrated its thorough commitment to future compliance.

THE DEFENDANT
THE CITY OF BRIDGEPORT/BRIDGEPORT
POLICE DEPARTMENT

By: *[signature]*
William J. Wenzel ct 06056
Aimee J. Wood ct 18702
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Telephone (203) 330-2000
Facsimile (203) 576-8888

and

Mark Anastasi ct 05885
Melanie Howlett ct 22517

Office of the City Attorney
999 Broad Street
Bridgeport, CT 06604
Telephone: (203)576-7647
Facsimile: (203)576-8252
E-mail:anastM0@ci.bridgeport.ct.us
     howleM0@ci.bridgeport.ct.us
Its Attorneys

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on this date to all counsel and pro se parties of record.

William H. Clendenen, Jr.
Special Master
Clendenen & Shea, LLC
400 Orange Street
New Haven, CT 06511
Telephone: (203)787-1183
Facsimile: (203)787-2847
E-mail: whcj@clenlaw.com

Antonio Ponvert III, Esq.
Sean K. McElligott
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
P.O. Box 1661
Bridgeport, CT 06604-1661
Telephone: (203)336-4421
Facsimile: (203)368-3244
E-mail: aponvert@koskoff.com
smcelligott@koskoff.com

Harry B. Elliott, Jr. Esq.
AFSCME, Council 15
Legal Department
290 Pratt Street
Meriden, CT 06450
(203)237-2250
E-Mail: helliottjr@yahoo.com

John R. Williams, Esq.
51 Elm Street
New Haven, CT 06510
(203)562-9931
Fax: (203)776-9494
jrw@johnrwilliams.com

_____
William J. Wenzel ct 06056
Aimee J. Wood ct 18702