UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| The Bridgeport Guardians, Inc., et al., *Plaintiffs,* <br><br> *v.* <br><br> Arthur J. Delmonte, et al., *Defendants.* | Civil No. 5:78cv175 (JBA) <br><br><br><br> December 29, 2010 |

RULING ON MURPHY PIERCE'S COMPLAINT OF RACIAL DISCRIMINATION

On October 4, 2010, the Court issued an Order [Doc. # 1970] directing Bridgeport Police Officers who had previously filed complaints with the Special Master to submit to the Court "[a] brief statement of the conduct that the officer claims constitutes racial discrimination against him or her by the Bridgeport Police Department, . . . [a] memorandum presenting the officer's argument in support of his or her claim of racial discrimination, . . . [a]ny and all documents, affidavits or other evidence that the officer claims support his or her claims of racial discrimination[, and] . . . [a]ny request to present oral testimony from the officer or any witnesses, describing briefly the substance of the proposed oral testimony."

Officer Murphy Pierce, through counsel, filed a timely statement of conduct that he claims demonstrates racially discriminatory disciplinary procedures by the Bridgeport Police Department ("BPD"). Officer Pierce alleges that BPD Chief Bryan Norwood referred him to the Board of Police Commissioners for discipline in excess of the maximum thirty days that the Chief had the authority to impose for Pierce's violation of Department rules, which Pierce claims constituted racially disparate treatment in that Norwood did not refer white officers also charged with serious misconduct to the Board, instead retaining their cases for

discipline within his authorized limits. For the reasons set forth below, and after a hearing

on the matter held on October 21, 2010, the Court dismisses Officer Pierce's claims of racial

discrimination because he presents insufficient evidence of similarly–situated white officers

to show that the Remedy Order was violated by Norwood's referral practices.

I.      Officer Pierce's Complaint and Relevant Background

Officer Pierce claims that BPD Chief Bryan Norwood "engaged in disparate

treatment of [Pierce] by recommending disciplinary action in excess of thirty (30) days for

Murphy Pierce's violation of work rules." (Pierce Mem. Supp. at 4.) Pierce argues that Chief

Norwood imposed only "fifteen (15) days of discipline" on similarly–situated white

comparator BPD officers and that those officers therefore were not referred to the Board of

Police Commissioners for a disciplinary hearing as Officer Pierce was. (*Id.* at 5–6.)

The disciplinary action taken against Officer Pierce stemmed from a civilian's

allegations that Pierce, while in uniform, asked hot dog stand owner Michael Pinto for a

$500 loan, took four hot dogs on two occasions from Pinto's stand without paying, and later

intimidated a witness in connection with her testimony regarding Pinto's allegations against

him. (*See* Ex. B to Resp. [Doc. # 1979].) After reviewing the Office of Internal Affairs'

("OIA") Investigative Findings dated May 10, 2007 on Pinto's complaints about Officer

Pierce's conduct—which included interviews with Pinto, his employees, Sergeant Richard

Azzarito, to whom Pinto had complained about Pierce's alleged conduct, and Officer

Pierce—Chief Norwood charged Officer Pierce with violations of eight Department Rules

and Regulations,[1] and referred the matter to the Board of Police Commissioners for a

---

[1] Chief Norwood charged Pierce with violating the following Rules and Regulations:

disciplinary hearing.  (*See* Exs. A, B to Resp.)  The OIA Investigative Findings reviewed by

Chief Norwood concluded that there was "some substance" to Pinto's allegations regarding

---

1.1 Members of the Department shall familiarize themselves with these Rules and Regulations and each member shall conform and abide by same.

1.2 These Rules are a basis for action and are not meant to be all–inclusive.  No member of this Department will be excused from action in accordance with sound judgment merely because the situation is not covered by a rule.

3.1 Officers shall preserve the peace, protect life and property, prevent crime, apprehend criminals, recover lost and stolen property, and enforce in a fair and impartial manner the Ordinances of the City of Bridgeport and laws of the State of Connecticut and of the United States.

3.2 Members of the Department shall be held responsible for the proper performance of the duties assigned to them.

3.5 Members of the Department shall at all times be attentive to their duties, and by their alertness and observation demonstrate an interest in their work.

4.2 Failure of a member, either wilfully or through negligence, incompetence, or cowardice, to perform the duties of his or her rank or assignment, or violation by a member of any department rule, duty instruction, or order, or conduct prejudicial to the good order and police discipline of the Department, or conduct unbecoming an officer and a lady or gentleman, which may not be specifically set forth in Department rules, may be considered sufficient cause for discharge, demotion, suspension, or other penalty.

4.5 Members of the Department shall not use their position to obtain, or attempt to obtain, free admission for themselves or other persons to any theatre, movie or other public place of amusement, or to obtain meals and lodging free of charge or at a discount in any restaurant, hotel, or motel.

6.1 Members of the Department shall not wear the uniform at any time except when on active duty or on special occasions or assignments of which their Commanding Officers have knowledge . . . They shall don their uniforms immediately before, or at a reasonable time prior to reporting for active duty, and removes their uniforms immediately or within a reasonable length of time after the expiration of their tour of duty.
(June 4, 2007 Norwood Letter, Ex. A to Resp.)

Pierce's request for money and highlighted as "an area of concern" Pierce's denial during the investigation of having been at Pinto's hot dog cart on March 30, 2007, after the investigation began, despite information to the contrary. (May 10, 2007 OIA Report, Ex. B to Resp. at 9–12.) That report ultimately concluded that Pierce had violated Department Rules and Regulations. (*Id.*) On March 18, 2008, after a hearing, the Board of Police Commissioners found that Officer Pierce violated Department Rules 1.1, 1.2, 3.1, 3.2, 3.5, 4.2, 4.5, and 6.1 and terminated his employment with the BPD. (Ex. F to Resp.)[2]

In support of his claim that Chief Norwood's referral of his charges to the Board of Police Commissioners constituted racially–disparate treatment in violation of the 1983 Remedy Order, Officer Pierce points to Norwood's decision not to refer to the Board two white BPD officers, Paul Nikola and Theodore Montagna, even though they were also charged with serious misconduct. Pierce argues that because these officers engaged in conduct at least as serious, they are appropriate comparators, and Chief Norwood's refusal to refer them to the Board for potential discipline in excess of thirty days demonstrates racially disparate treatment in the disciplinary process in violation of the Remedy Order.

The Investigative Report into the actions of Officer Paul Nikola, provided to Chief Norwood on April 9, 2008, concluded that Nikola violated several BPD Rules and Regulations in brokering the sale of 76 year–old Ceila Turetsky's late husband's firearm

---

[2] Officer Pierce, in his Statement and Memorandum in Support, and particularly at the October 21, 2010 Hearing before this Court, continues to attack the merits of the Board's termination decision. However, it is only the allegedly race–based decision of Chief Norwood to refer Pierce's case to the Board of Police Commissioners and whether that decision violated the 1983 Remedy Order that are before the Court in Pierce's complaint and whether that decision, when compared with Norwood's decision not to refer white officers to the Board, constitutes racially–disparate treatment.

while on duty without properly recording the transaction or remitting the proceeds of the sale to Ms. Turetsky. (April 9, 2008 Nikola Investigative Report, Nikola Records [Doc. # 1996–1] at 19–20.) The Report also found that Nikola had engaged in "apparent forgery" of the firearm sale documents during the Office of Internal Affairs' ("OIA") investigation into the transaction. (*Id.* at 21–22.) The Report concluded with a finding of cause against Nikola for violating Departmental Rules concerning knowledge of the rules and regulations, conduct unbecoming an officer, and departing from the truth, and further expressed concern regarding Nikola's credibility and fitness for duty. (*Id.* at 23–25.) Chief Norwood did not refer Officer Nikola to the Board of Police Commissioners for discipline, but imposed a fifteen day suspension without pay. (June 5, 2008 Norwood Order, Nikola Records, at 2.)

The OIA Investigation into Officer Theodore Montagna's conduct, as summarized in a November 14, 2007 report to Chief Norwood, concluded that Montagna violated BPD Rules and Regulations concerning knowledge of department rules and regulations, conduct conformance to law, and conduct unbecoming an officer. (November 14, 2007 OIA Report, Montagna Records [Doc. # 1996] at 1–2.) According to the OIA report on Montagna's conduct, he was arrested in Wallingford, Connecticut on October 4, 2007 for forgery to obtain a prescription drug, which occurred after he had earlier attempted to fill a prescription for Percocet in July 2007 using the prescription pad of Dr. Raymond Keough, who had stopped issuing Montagna prescriptions for the drug prior to July 2007 and represented that he did not write the prescriptions that Montagna used in his attempt to obtain the drugs. (*Id.*) As with Officer Nikola, Chief Norwood did not refer Officer

Montagna to the Board of Police Commissioners for discipline and instead imposed a fifteen day suspension without pay.

II.     Discussion

In order to show that he has been subjected to disparate treatment in the form of harsher treatment "than a similarly situated employee outside his protected group," Officer Pierce must demonstrate that he and his comparators "were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz v. County of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (internal quotations omitted) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). "Comparable conduct" does not require that the employees' conduct be identical, but requires "comparable seriousness" as demonstrated by a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Graham*, 230 F.3d at 40 (internal citations omitted).

The facts and circumstances of the charges against these three officers are very dissimilar and despite the seriousness of each of the offenses charged, the record is too thin to establish sufficient comparability to support an inference of racially disparate treatment. Although narcotic prescription forgery, improper firearm sale procedures, and withholding proceeds are serious, the behavior that Pierce was charged with is a very different form of police misconduct. As presented in the report to Chief Norwood, Pierce's misconduct consisted of repeat importuning, while in uniform, of a small business owner, appearing to exploit the authority of his position for personal gain, followed by intimidation to conceal his actions. (May 10, 2007 OIA Report at 9–13.) While the misconduct of Montagna and Nikola also included dishonesty (*see* November 14, 2007 OIA Report at 1–2; April 9, 2008

6

Nikola Investigative Report at 21–22), their actions lacked the intimidating and coercive characteristics of the behavior of which Pierce was accused. While it may well have been appropriate to refer all three officers to the Board, the differences in the circumstances and types of conduct of the three officers are too substantial to provide the necessary comparability to infer a racial basis for Norwood's decision–making. *See Graham*, 230 F.3d at 40.

The only issue before the Court is whether Chief Norwood's decision to refer Pierce, but not Montagna or Nikola, to the Board of Police Commissioners evidences racially discriminatory discipline. Since the record on comparability is inadequate for the Court to attribute discriminatory intent to Chief Norwood, the Court concludes that Officer Pierce has not adequately supported his claim that race was a motivating factor in Chief Norwood's decision to refer him to the Board of Police Commissioners for discipline while retaining the charges against two white officers for his own, lesser discipline.

III.    Conclusion

Accordingly, Officer Murphy Pierce's complaint of disparate treatment in violation of the Remedy Order is dismissed.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of December, 2010.