UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| The Bridgeport Guardians, Inc., et al.,<br>  *Plaintiffs*,<br><br>  v.<br><br>Arthur J. Delmonte, et. al.,<br>  *Defendants*. | Civil No. 5:78cv175 (JBA)<br><br><br><br>December 29, 2010 |

RULING ON COMPLAINT OF LIEUTENANT WILLIAM BAILEY

On October 4, 2010, the Court issued an Order [Doc. # 1970] directing Albert Karpus, Daniel Garcia, Gilberto Valentin, Juan P. Gonzalez, JoeAnn Meekins, Murphy Pierce, and William Bailey, who had complaints pending with the Special Master, to submit to the Court "[a] brief statement of the conduct that the officer claims constitutes racial discrimination against him or her by the Bridgeport Police Department, . . . [a] memorandum presenting the officer's argument in support of his or her claim of racial discrimination, . . . [a]ny and all documents, affidavits or other evidence that the officer claims support his or her claims of racial discrimination[, and] . . . [a]ny request to present oral testimony from the officer or any witnesses, describing briefly the substance of the proposed oral testimony."

Lieutenant William Bailey timely filed a memorandum and statement of conduct claiming that a racially–charged working environment was created when Lieutenant Adia Remele posted in the Training Academy of the Bridgeport Police Department ("BPD") the Chief of Police's letter to the editor of the Connecticut Post, which responded to Lieutenant

Bailey's prior letter to the editor, and which Lieutenant Bailey claims contained "untrue and offensive statements" about him. A hearing on the complaint was held on October 20, 2010. For the reasons that follow, the Court dismisses Lieutenant Bailey's complaint.

I.  Lieutenant Bailey's Complaint and Relevant Background

On February 3, 2008, the Connecticut Post published a letter to the editor that Lieutenant Bailey wrote to address "negative news about the Bridgeport Police Department"; he described his concerns about the BPD's handling of discipline against Officer Murphy Pierce and the City of Bridgeport's ("City") attempts to "get rid of" the Remedy Order. (Ex. D to Bailey Mem. [Doc. # 1976] at 2.) Subsequently, the Connecticut Post published then–BPD Chief Bryan Norwood's responsive letter defending the BPD's actions in the Pierce case and its compliance with the Remedy Order. (Bailey Mem. at 1–2; Ex. D at 1.)

Lieutenant Bailey's complaint, as described in his Memorandum and further explained at the October 20 hearing, centers on Lieutenant Adia Remele's posting of Chief Norwood's letter in a gold frame in an area of the BPD Training Academy viewable by members of the BPD who had access, which Bailey found to be an offensive, hostile act. (Bailey Mem. at 1–2.) According to Bailey, Remele then refused orders from the Office of Internal Affairs ("OIA"), Deputy Chief Anthony Armeno, and Chief Norwood to take the letter down immediately, although she later moved it to "another location." (*Id.* at 2–3.)

Lieutenant Bailey also claims that after he filed an OIA complaint against Lieutenant Remele on March 26, 2008, he was "troubl[ed]" by the "disparity in treatment regarding the process utilized by OIA." (*Id.* at 3.) Bailey asserts that in the OIA investigation of his complaint, Remele "did not get called to OIA for an interview until May 7, 2008," compared to OIA's alacrity in responding to Remele's hostile work environment complaint against

Bailey, where OIA commander Lieutenant Rebecca Garcia "<u>immediately</u> asked [Bailey] <u>over the internet</u> questions in regards to Capt. Remele['s] complaint." (*Id.* (emphasis in original)).

Bailey also "repeatedly informed" the BPD that Deputy Chief Adam Radzimirski and Captain Brian McCarthy "were subjecting [Bailey] to cold unnerving intimidating stares," in response to which OIA only "ask[ed] a few questions in regards to this matter that Radzimirski has denied." (*Id.*) Bailey also "has had heightened concerns for his safety" due to an incident in which Radzimirski attempted to punch Officer Greg Immaritino but the BPD "has done nothing." (*Id.* at 4.) Bailey additionally complains that the BPD has conducted no investigation into his July 23, 2008 OIA complaint "of a false statement made by [] Radzimirski that was sworn to in an OIA investigation" and that, according to "the June 9th, 2008 ruling accepted by the court," Radzimirski does "not favor well with being fair with minorities or his truthfulness," yet is "still allowed to sit on panels where minorities are to be evaluated for assignments to Specialized Divisions." (*Id.*)

In his Memorandum, Bailey also cites an October 12, 2008 e–mail from Captain Douglas Stoltz to "numerous officers" blaming Bailey "in part for the proposed layoffs by then–Chief Norwood" as another instance of "false accusations causing [Bailey] concern in the work place and no action taken." (*Id.* at 4–5.) Bailey's 25–year personnel records are also "mysteriously missing," and the Department's clerk acknowledges that no other personnel file has been lost in his seven–and–a–half years as Department clerk. (*Id.* at 5.)

The focus of the October 20, 2010 hearing on Lieutenant Bailey's complaint was Bailey's claim about Remele's posting and his missing personnel file, in addition to

Lieutenant Bailey's summary that all of the actions described above made him uncomfortable, and as a whole, created the feeling of a "racially charged environment." (Bailey Mem. at 1, 6–7.)

II. Discussion

Pursuant to the Court's October 4, 2010 Order and the 1983 Remedy Order, the role of the Court in reviewing the "facts and circumstances" of Lieutenant Bailey's submissions to the Special Master is to determine whether he has presented sufficient evidence to demonstrate racially–discriminatory treatment in violation of the 1983 Remedy Order. *See* October 4 Order; *Bridgeport Guardians v. Delmonte*, 553 F. Supp. 601, 618–20 (D. Conn. 1982).[1] The City argues that the circumstances he alleges do not "contain any reasonable basis in fact from which to infer racial discrimination." (Resp. [Doc. # 1980] at 8.) The City also argues that the Court's review should be confined to Bailey's March 26, 2008 complaint about Chief Norwood's letter as this is Bailey's only pending complaint. (*Id.* at 6–7.)

As an initial matter, the City is correct that, according to correspondence from the Special Master, Lieutenant Bailey's March 26, 2008 complaint concerning Lieutenant Remele's posting of Chief Norwood's letter is his only pending complaint with the Special Master (*see* Exs. E, F to Resp.), and thus is the focus of the Court's review.

Lieutenant Bailey is not unreasonable in reading Chief Norwood's letter as, at least in part, a personal attack on him; it directly responds to Bailey's letter and refers to Bailey throughout, criticizing actions taken by the Guardians under Lieutenant Bailey's leadership

---

[1] This process has no effect on officers' rights to bring complaints of unlawful discriminatory treatment to the Connecticut Commission on Human Rights and Opportunities, the Equal Employment Opportunity Commission, or their Union.

4

and accusing Bailey as having "recovered thousands and thousands of dollars from the city over the years through his own complaints." (Ex. D to Bailey Mem.) That Bailey perceived the letter as "offensive" is understandable, as is his reaction to the posting of that letter on the wall of the BPD Training Academy.

Whether Remele's posting of the letter was proper under Departmental guidelines is not before this Court; the issue here is whether that posting and the surrounding circumstances prove a violation of the 1983 Remedy Order by creating a racially charged working environment. The fact that the letter was related to the subject of racial discrimination because it concerned the BPD, City, and Guardian's conduct during the protracted course of this litigation is, however, insufficient to support an inference that Remele's posting it and refusing to immediately remove it rises to the level of a severe or abusive act of racial enmity or harassment, even in the context of Bailey's other acrimonious but isolated experiences. *See Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010).

III. Conclusion

Accordingly, Lieutenant William Bailey's complaint of a racially-charged working environment has not been proved and his complaint is dismissed.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of December, 2010.